George Cecil ROBERTS, Petitioner

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 07SC430.

Supreme Court of Colorado,
En Banc.

March 2, 2009.

Rehearing Denied March 30, 2009.

514

Lauretta A. Martin Neff, Bayfield, Colorado, Attorney for Petitioner.

John W. Suthers, Attorney General, Christine C. Brady, Assistant Attorney General, Denver, Colorado, Attorneys for Respondent.

Justice COATS delivered the Opinion of the Court.

Roberts sought review of the court of appeals' judgment affirming both his conviction of theft and his aggravated sentence. *See People v. Roberts*, 179 P.3d 129 (Colo.App. 2007). A jury found him guilty of a single count of theft, in which he was charged with unlawfully taking more than $15,000, over a 27–month period, from Southland Corporation (7–Eleven); and it returned a special finding that the theft involved a total of $27,169.14 and occurred on the day all of the losses were ultimately discovered. The court of appeals upheld both his conviction of class-three-felony theft and his mandatorily aggravated sentence, reasoning that the evidence supported the commission of a single offense of "theft by deception," which continued, and included everything taken by Roberts, until the deception ended, by which time he was already on probation for another offense.

Because the consolidated theft statute in this jurisdiction does not create a separate and continuing crime of theft by deception, the court of appeals erred with regard to both the time the theft was committed and the value of the property involved in a single offense. Its judgment affirming the defendant's conviction is, however, affirmed because there was sufficient evidence to support the conviction of class-three-felony theft and any error committed by the trial court in instructing the jury was harmless.

## I.

George C. Roberts was charged with one count of theft of $15,000 or more, a class three felony, as defined at section 18–4–401 of the revised statutes.[1] He was convicted in a jury trial and sentenced to eight years in prison. In imposing sentence, the district court made clear that it considered itself bound to impose at least the minimum sentence statutorily mandated for any felon already on probation at the time he committed his current offense.[2]

It was undisputed that the defendant managed three 7–Eleven convenience stores at various times and that his duties included the daily deposit of the sales proceeds from those stores. According to the testimony of a 7–Eleven loss prevention manager and the defendant's supervisor at his last store, the two of them scheduled a meeting with the defendant on March 21, 2001 to discuss irregularities that had come to their attention. Apparently believing they were aware that his stores were missing large cash deposits, the defendant volunteered losing $11,000 in June 1999 from the store he was managing at that time and covering up not only that loss but other shortfalls he discovered at his current store as well. The defendant's supervisor audited the accounts and determined that $27,169.14 received by the defendant's last store, during his four-month tenure as manager there, could not be accounted for.

Although the defendant did not testify at trial, his earlier statements were admitted as evidence. In a written statement, he indicated that one evening in June 1999, as he was leaving the first store to make his deposit, he returned to answer a phone call and left the money on top of his car. By the time he got back, the deposit of approximately $11,000 was gone. The defendant explained that he tried to prevent his superiors from discovering the missing money by rolling back the deposits each day to cover the previous day, hoping all the while to eventually be able to repay the missing amounts.

Also according to the defendant's written statement, in December 2000, when he was asked to temporarily manage a second store and to become the permanent manager of a third store, he covered the losses from the first store with proceeds from the second, using the same accounting subterfuge to hide the shortfall this created. He further indicated that he similarly covered the shortfall from the second store, which he managed for less than a month, with proceeds from the third store; but within days of assuming the management of that third store, he also discovered that it was short an additional $15,000 to $16,000. Not knowing who took the money from either store and assuming that as a felony probationer he would be unable to secure a loan to repay the money and would be fired upon discovery of the losses, the defendant chose not to report any of the losses but to continue rolling back deposits each day to cover the previous day's receipts.

Although the charging document alleged a single count of theft of $15,000 or more, committed over a 27–month period, the defense did not challenge the charge as duplicitous or seek to have it narrowed by a bill of particulars. Instead, at trial the defense moved to force the prosecution to elect a specific six-month period upon which to rely and to have the jury instructed to disregard any evidence of acts committed outside that period. Apparently considering multiple takings from the same owner to be the same theft, rather than an aggregation of two or

---

1. In 2007, the General Assembly amended the statute, limiting class-three-felony theft to thefts involving $20,000 or more. Ch. 384, sec. 3, § 18–4–401, 2007 Colo. Sess. Laws 1690–91.

2. *See* § 18–1.3–401(8)(a)(III), C.R.S. (2008).

more thefts as contemplated by the theft statute, the trial court denied the motion. It did, however, instruct the jury, should they find the defendant guilty, to separately indicate when the theft or thefts occurred and the amount of money involved.

The defense rested without presenting any evidence and offered no instruction containing its theory of the case. In closing argument, defense counsel argued primarily that the evidence was insufficient to prove that the defendant, as distinguished from others at the store who had similar opportunity, committed the theft. The jury found the defendant guilty and also returned a special finding "that theft(s) in the amount(s) of $27,169.14, occurred on 3–21–2001." The court entered a judgment of conviction for one count of class-three-felony theft and sentenced the defendant to eight years incarceration, making clear that it considered itself bound to sentence him to at least that amount because he was on probation for another felony conviction by March 2001, when the losses were discovered and when the jury determined the theft occurred.

On direct appeal, the defendant challenged the sufficiency of the evidence to support his conviction for a theft of at least $15,000 and his mandatorily aggravated sentence, as well as the denial of his motion for election. The court of appeals affirmed both the defendant's conviction and sentence, reasoning that the evidence supported conviction of a single offense of theft by deception, the commission of which continued as long as the theft was being concealed and included all unauthorized takings by the defendant from 7–Eleven over that entire period.

## II.

■ Colorado is among the substantial majority of states that have consolidated the crimes of larceny, embezzlement, and theft under false pretenses in a single crime of theft. *See People v. Warner*, 801 P.2d 1187, 1189 (Colo.1990); Colorado Legislative Council, Report to the Gen. Assembly of 1965, Research Publication No. 98, at 33 comment (1964); *see generally* Wayne R. LaFave, Substantive Criminal Law, § 19.8 at 140–48 (2nd ed.2003). According to this statute, a person commits the crime of theft when he knowingly obtains or exercises control over anything of value of another without authorization or by threat or deception, and in addition he either intends to permanently deprive the other person of its use or benefit; demands a consideration to which he is not legally entitled to return it; or uses, conceals, or abandons it with the intent to, or at least the knowledge that his conduct will, permanently deprive the other person of its use or benefit. *See* § 18–4–401(1), C.R.S. (2008). Whichever way the crime is committed, it constitutes the offense of "theft."

■ Unless a theft is committed from the person of another (by means other than those constituting robbery), *see* § 18–4–401(5), its categorization as either misdemeanor theft or a particular class of felony is made contingent upon the "value of the thing involved." § 18–4–401(2). In addition, multiple thefts (other than theft from a person or thefts for which the defendant has already been placed in jeopardy), committed by the same person within a six-month period, of things with an aggregate value in the felony range, constitute a single crime of theft, the classification of which is determined by the aggregate value of all of the things involved. § 18–4–401(4) ("When a person commits theft twice or more within a period of six months ... *it is a* class ... felony." (emphasis added)).

■ There can be little doubt that this language not only permits, but in fact requires, all thefts committed by the same person within a six-month period (except any for which jeopardy had already attached before he committed the others), to be joined and prosecuted as a single felony. On its face, this provision speaks to the scope of the crime the legislature intended to create— what we and the United States Supreme Court have previously referred to as the "unit of prosecution." *See, e.g., People v. Abiodun*, 111 P.3d 462, 465 n. 2 (Colo.2005). In describing its unit of prosecution for theft in terms of the crime of theft itself, however, the legislature has injected an element of circularity into the provision, leaving some question as to whether a single offense of

theft is limited to all discrete acts of theft committed by the same person within any six-month period; or whether any individual crime of theft, depending upon the manner and circumstances of its commission, may yet be capable of continuing beyond that period.

By analogizing a theft that is accomplished by obtaining or exercising control through the use of deception with certain crimes of unlawful possession, the court of appeals found it appropriate to characterize "theft by deception" as a continuing crime. By further extending the continuing crime doctrine beyond the statute of limitations setting for which it was created, *see United States v. Bailey,* 444 U.S. 394, 413–14, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980); *People v. Thoro Products Co., Inc.,* 70 P.3d 1188, 1192–93 (Colo.2003), and transforming it into a measure of the legislature's chosen "unit of prosecution," the court of appeals found support for the jury verdict in this case. Applying this doctrine, it reasoned that the jury could have legitimately concluded that the defendant's crime continued until his pattern of concealment was finally revealed and included all the takings of which he was accused. For a number of reasons, this unit-of-prosecution theory cannot be sustained.

Even when properly confined to periods of limitation on prosecution, the doctrine of continuing crimes can apply only where the General Assembly has unmistakably communicated its intent to create such an offense. *Thoro Products,* 70 P.3d at 1193 (citing *Toussie v. United States,* 397 U.S. 112, 115, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970)). Little, if anything, in the language of the consolidated theft statute remotely suggests an intent to create a separate and distinct crime of theft by deception, which continues until the deception ends.[3] Although we have at times used the term "theft by deception" for convenience, deception is simply one of the alternate ways in which the statutory crime of theft can be accomplished. *See West v. Roberts,* 143 P.3d 1037, 1040 (Colo.2006); *Warner,* 801 P.2d at 1189.

In any event, it is difficult to meaningfully analogize continuing to conceal the unlawful taking or control of another's property to continuing to possess contraband. To the extent the statute makes reference to concealing at all, it does so only with regard to the thing of value itself rather than the deception employed in obtaining or exercising control over it, or subsequent deceptive acts designed to prevent the already completed crime from being discovered. Even then, the statute merely permits "using, concealing, or abandoning" the property (with the requisite culpable mental state) to substitute for a specific intent to permanently deprive at the actual moment of obtaining or exercising control over the property. Theft is therefore a crime of unlawful deprivation—not merely unlawful possession.

■ Finally, to the extent that a theft committed by obtaining another's property through deception might be analogized to certain former theft-related crimes, like embezzlement or obtaining goods by false pretenses, those crimes were expressly abolished with the adoption of the consolidated theft statute, for the express purpose of removing the distinctions and technicalities that previously existed in the pleading and proof of theft-like crimes. *See* § 18–4–403. While we have previously identified considerations for determining whether various acts constitute a single crime or successive violations of the same criminal proscription, we have always recognized that this determination must ultimately be made in light of the legislature's intent, as expressed in its definition of the offense itself. *See Abiodun,* 111 P.3d at 470 ("[T]he factual distinctness required for a successive violation can be properly determined only by reference to the organizing principle of the offense."). The scope of an individual offense of theft must therefore be determined in reference to the consolidated theft statute itself.

■ Section 18–4–401(4) treats as a single theft all thefts committed by the same person

---

3. It is worth noting that any separate designation of "theft by deception" as a continuing offense for purposes of a limitations period would be wholly unnecessary in light of the general statute of limitations provision including "theft" among those crimes for which the limitations period does not begin to run until discovery of the criminal act. *See* § 16–5–401(4.5)(c), C.R.S. (2008).

in a six-month period. Any potential circularity in this definition of "theft" is avoided by understanding it as including those acts, and only those acts, that would constitute completed and prosecutable crimes of theft in their own right. Construed this way, the provision makes perfect sense and distinguishes with clarity a single crime of theft from successive offenses, or successive units of prosecution. The effect, however, is (among other things) to limit any single crime of theft to those separately prosecutable acts of theft committed within the prescribed period, whether or not they might otherwise have been considered motivated by a single criminal impulse or part of a broader ongoing enterprise.

■ An offense of theft is complete and may be separately prosecuted when one knowingly controls the property of another without that person's authorization and either has an intent at that moment to permanently deprive the other person of its use or treats the property in a manner that he intends to, or at least knows will, permanently deprive the other person of it. Precisely when those conditions have been met will, of course, differ with the circumstances of each case, but when a properly informed trier of fact determines that they occur with regard to any particular thing of value, a crime of theft is committed. The statute itself permits any other theft committed by the same person within six months to be joined as part of the same felony offense, with the seriousness of that offense being determined by the aggregate value of all of the things involved. By the same token, no other crime of theft committed by that same person in the same time frame (and before jeopardy attaches) can support a separate conviction for theft.

### III.

■ The defendant asserts that there was insufficient evidence to support his conviction of a class three felony or mandate an aggravated sentence. He also asserts that the jury was not properly instructed regarding the elements of class-three-felony theft, in the absence of an election by the prosecution of a particular six-month period over which the value of property stolen by him could be aggregated.

■ With regard to the former challenge, even under a proper construction of the consolidated theft statute, there was sufficient evidence to support the conviction for theft of $15,000 or more. A motion for judgment of acquittal may be granted only if the relevant evidence, both direct and circumstantial, when viewed as a whole in the light most favorable to the prosecution, is not substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt. *See People v. Bennett,* 183 Colo. 125, 129–30, 515 P.2d 466, 468–69 (1973); *see also People v. Lehnert,* 163 P.3d 1111, 1115 (Colo. 2007).

Although there was virtually no evidence from which the jury could believe that the defendant stole $11,000 from his first store anytime other than June 1999; or that the defendant had access to the proceeds of his last 7–Eleven store within six months of that time frame; nevertheless, there was an abundance of evidence from which the jury could find that the defendant took and used or concealed more than $15,000 from his last store, in a manner he knew would deprive the corporation of its use or benefit. In fact, the subsequent investigation of the defendant's supervisor at that store verified that a total of $27,169.14 in store receipts went missing during the defendant's tenure as manager. Because the defendant was already on probation for another felony conviction by the time he began managing that store, there was similarly sufficient evidence to mandate an aggravated sentence.

With regard to the defendant's second assertion, however, the jury was not properly instructed to make either finding. Because the trial court subscribed to the theory that all of the surreptitious takings by this defendant from the same victim, 7–Eleven, would necessarily constitute a single theft, the jury was never instructed to determine whether the value of the things involved was $15,000 or more as the result of the defendant's having committed theft two or more times within a period of six months. *See* COLJI–Crim. 16:01 (1983); *see also* COLJI–Crim. 4–

4:01 to –4:04 (2008). Where the evidence at trial would support a finding of more than one theft committed by the defendant, the failure to limit the jury in this way was error.

Rather than objecting to the charge or the elemental instruction, however, the defendant attempted to force the prosecution to elect a particular six-month period on which to rely. The statute contains no such requirement, and we have never suggested that theft is a charge, like sexual assault on a child, with regard to which the prosecution may avoid normal charging requirements by electing a particular act or series of acts at the close of its case; or with regard to which a defendant may demand that a vague or overly broad charge be narrowed once trial has begun. Whether a defendant might under some circumstance actually be entitled to such an election, or whether the defendant's motion was at least a sufficient objection to the elemental instruction or special interrogatory, are questions that need not be addressed where any error, if it occurred, would be harmless.

The jury's verdict and their special finding that the defendant stole $27,169.14 are unequivocal indications that they accepted the supervisor's determination of the amount taken from the defendant's last store. Whether or not the jury could have reasonably believed that approximately $11,000 of that amount was returned to a different store rather than kept by the defendant, their verdict necessarily evidences a finding of theft of more than $15,000 by the defendant during his four-month tenure as manager. Under these circumstances, it is beyond dispute that any instructional error could have had no impact on either the level ·of conviction or sentence.

### IV.

Although the court of appeals mistakenly believed that the evidence supported the commission of a single offense of "theft by deception," which continued, and included everything taken by Roberts until the deception ended, the failure of the district court to include the statutory six-month limitation in the jury's elemental instruction was harmless. The judgment of the court of appeals,

affirming the defendant's conviction and sentence, is therefore affirmed.