349 P.3d 280
2014 COA 60
The PEOPLE of the State of Colorado, Plaintiff–Appellee
v.
Jerry Lee RHEA, Defendant–Appellant.
Court of Appeals No. 12CA1133
Colorado Court of Appeals, Div. IV.
Announced May 8, 2014
John W. Suthers, Attorney General, Kevin E. McReynolds, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee
Robinson Waters & O'Dorisio, P.C., Anthony L. Leffert, Denver, Colorado; Campbell Killin Brittan and Ray, LLC, Phillip A. Parrott, Denver, Colorado, for Defendant–Appellant
Opinion
Opinion by JUDGE WEBB
¶ 1 Defendant, Jerry Lee Rhea, was convicted of one count of theft, one count of conspiracy to commit theft, and three counts 349 P.3d 285
of attempting to influence a public official. He appeals his convictions for theft and conspiracy to commit theft on two grounds. First, presenting novel questions in Colorado, he contends the trial court's error in allowing multiplicitous charges to go before the jury warrants reversal because merging his convictions at sentencing did not cure the alleged double jeopardy violation, and alternatively, his due process rights were violated because those charges may have led the jury to reach a compromise verdict. Second, he contends he is entitled to a judgment of acquittal or a new trial because of prosecutorial misconduct. We conclude that merger cured any double jeopardy concerns, defendant's due process rights were not violated, and prosecutorial misconduct does not warrant relief.
I. Background
¶ 2 Defendant was charged with ten counts of theft, ten counts of conspiracy to commit theft, and three counts of attempting to influence a public official. These charges arose from approximately $250,000 in road work for which defendant's company invoiced Adams County and was paid, but allegedly did not perform. The prosecution's case included a former employee, who testified that defendant had instructed him to falsify invoices describing this work, and an audit that confirmed the overbilling.
¶ 3 Before trial, defendant moved to dismiss the theft and conspiracy charges, arguing that he was prejudiced by the multiplicity of these counts. The trial court ruled that the prosecution had discretion to charge defendant with these offenses and present them to the jury, and any multiplicity issues could be resolved at sentencing.
¶ 4 Following a four-week trial, the jury convicted defendant of all charges. Defendant moved for a judgment of acquittal or a new trial based on alleged prosecutorial misconduct and for merger of the theft and conspiracy counts. The trial court found some prosecutorial misconduct, but concluded that it was harmless. The court merged some of his convictions, entering convictions for one count of theft, one count of conspiracy to commit theft, and three counts of attempting to influence a public official. It sentenced him on these counts.
II. Defendant's Rights Under the Double Jeopardy and Due Process Clauses Were Not Violated
¶ 5 Defendant contends allowing multiplicitous charges to go before the jury violated the double jeopardy prohibition and his due process right to a fair trial. Both aspects of this contention raise unresolved questions of law in Colorado. We conclude that the double jeopardy prohibition does not preclude a trial court from allowing multiplicitous charges to go before a jury; any prejudice can be cured by merging multiplicitous convictions; and because the same evidence could have been presented to the jury, which convicted defendant on all counts, no due process violation occurred.
A. Preservation and Standard of Review
¶ 6 The parties agree that defendant preserved this issue by raising multiplicity both before and during trial. They disagree on the correct standard of review for a claim that multiplicity violated the double jeopardy prohibition. Defendant argues for a de novo standard based on cases such as Lucero v. People, 2012 CO 7, ¶ 19, 272 P.3d 1063. The Attorney General responds that we should review for an abuse of discretion, citing United States v. Throneburg, 921 F.2d 654, 657 (6th Cir.1990), and other federal circuit court cases. ¶ 7 Whether an indictment is multiplicitous and, if so, whether double jeopardy concerns warrant reversal are questions of law reviewed de novo. See, e.g., Lucero, ¶ 19 ; People v. Arzabala, 2012 COA 99, ¶ 19, 317 P.3d 1196 ; see also United States v. McKittrick, 142 F.3d 1170, 1176 (9th Cir.1998) (“We review de novo the question whether an indictment ... is multiplicitous and thus violates a defendant's double jeopardy rights.”). But the scope of review governing a trial court's decision to allow multiplicitous charges to go before the jury has not been discussed in any Colorado case cited by the parties, or that we have found. For reasons more fully described in the next 349 P.3d 286
section, we adopt the federal rule that appellate courts “review [a] district court's failure to compel the Government to elect one theory of prosecution, as a remedy for a multiplicitous indictment, for an abuse of discretion.” United States v. Platter, 514 F.3d 782, 785 (8th Cir.2008).[1] B. The Theft and Conspiracy Charges Were Multiplicitous
¶ 8 Here, the trial court recognized that sentencing defendant on ten counts of the theft statute and on ten counts of conspiracy to commit theft for acts within the same six-month period would have violated the double jeopardy prohibition. See Lucero, ¶ 24. The Attorney General concedes that this ruling was correct.[2] For the following reasons, we agree. ¶ 9 The applicable theft statute, ch. 384, sec. 3, § 18–4–401(4), 2007 Colo. Sess. Laws 1691, required “all thefts committed by the same person within a six-month period (except any for which jeopardy had already attached before [the person] committed the others), to be joined and prosecuted as a single felony.” Roberts v. People, 203 P.3d 513, 516 (Colo.2009), superseded by statute, ch. 244, sec. 2, § 18–4–401(4)(a), 2009 Colo. Sess. Laws 1099–1100. Yet here, the prosecution charged defendant with and the jury convicted him on ten separate theft counts and ten related conspiracy counts, all of which were based on acts that occurred within a six-month period. Thus, these twenty charges and convictions were multiplicitous because “the legislature provided that he be punished for only one” count of each.[3] Lucero, ¶ 24.
C. Merger by the Trial Court at Sentencing Cured Any Abuse of Discretion
¶ 10 Despite conceding multiplicity, the Attorney General asserts that the trial court had discretion to allow multiplicitous charges to go before the jury, and any harm from abuse of that discretion was cured by merging the multiplicitous charges into a single conviction. Defendant disagrees. On the particular facts presented, we side with the Attorney General.
1. Law ¶ 11 “Multiplicity is the charging of the same offense in several counts, culminating in multiple punishments.” Quintano v. People, 105 P.3d 585, 589 (Colo.2005). “The chief danger raised by a multiplicitous indictment is the possibility that the defendant will receive more than one sentence for a single offense.” United States v. Galvan, 949 F.2d 777, 781 (5th Cir.1991) (internal quotation marks omitted); see also People v. Vigil, 251 P.3d 442, 448 (Colo.App.2010) (“Multiplicitous convictions are prohibited because they violate the constitutional prohibition against double jeopardy.”). ¶ 12 “[T]he multiplicitous bar is at the core of the prohibition against double jeopardy.” Quintano, 105 P.3d at 590. Thus, “[a]nalysis of whether convictions should be merged must ... be based on double jeopardy principles.” 349 P.3d 287
People v. Henderson, 810 P.2d 1058, 1060 (Colo.1991). The Double Jeopardy Clause, U.S. Const. amend. 5, embraces “three separate but related prohibitions: (1) a rule which bars a reprosecution for the same offense after acquittal; (2) a rule barring reprosecution for the same offense after conviction, and; (3) a rule barring multiple punishment for the same offense.” Henderson, 810 P.2d at 1060 (internal quotation marks omitted).
¶ 13 Colorado cases provide a framework for deciding when a defendant's conduct may support multiple punishments and thus withstand a double jeopardy challenge. See, e.g., Roberts, 203 P.3d at 516 ; Quintano, 105 P.3d at 590–91. But the parties have not cited—nor have we found—a Colorado case addressing whether merger at sentencing would cure double jeopardy concerns arising from multiplicitous charges and jury convictions. See Lucero, ¶ 23 (addressing multiplicitous convictions as an illegal sentence); Roberts, 203 P.3d at 516 (addressing “unit of prosecution” for theft statute); Vigil, 251 P.3d at 449 (addressing double jeopardy concerns of multiplicitous convictions sua sponte); cf. Patton v. People, 35 P.3d 124, 128–33 (Colo.2001) (vacating conviction where the defendant entered guilty plea and was sentenced for two convictions based on the same transaction, while the General Assembly had authorized punishment for only one).
¶ 14 In each of these cases, the defendant sustained multiple convictions based on charges that the appellate court held were multiplicitous. While the courts in Lucero, ¶ 26, and Vigil, 251 P.3d at 451, directed that the multiplicitous theft convictions be merged on resentencing, neither court addressed whether a trial court has discretion to allow a jury to consider multiplicitous charges, provided that any multiplicitous convictions are merged at sentencing. Nor do these cases consider possible prejudice to a defendant from trial of multiplicitous charges, beyond multiple convictions. The federal circuits have addressed these issues, as follows.
¶ 15 While the Double Jeopardy Clause protects defendants from multiple punishments for the same offense, “[w]here there has been no prior conviction or acquittal, the Double Jeopardy Clause does not protect against simultaneous prosecutions for the same offense, so long as no more than one punishment is eventually imposed.”United States v. Josephberg, 459 F.3d 350, 355 (2d Cir.2006) ; see also Ohio v. Johnson, 467 U.S. 493, 500, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984) (“While the Double Jeopardy Clause may protect a defendant against cumulative punishments for convictions on the same offense, the Clause does not prohibit the State from prosecuting [a defendant] for such multiple offenses in a single prosecution.”).
¶ 16 Thus, when faced with multiplicitous charges, a trial court may take one of two courses. The court may exercise its discretion “to require the prosecution to elect between multiplicitous counts before trial.” United States v. Johnson, 130 F.3d 1420, 1426 (10th Cir.1997). Where, as here, multiplicity is both raised before trial and clear at that time, multiplicitous counts should be eliminated before trial because doing so would avoid the due process inquiry discussed below. But if a defendant has been convicted of multiplicitous counts, “the district court may exercise its discretion in deciding which conviction to vacate” at the sentencing phase. United States v. Wiga, 662 F.2d 1325, 1335–36 (9th Cir.1981).[4] ¶ 17 The later approach has been attributed to Ball v. United States, 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985), where “the Court suggested that any error resulting from multiplicitous charges should be resolved at the sentencing phase, not the 349 P.3d 288
guilt phase, of the trial.” Throneburg, 921 F.2d at 657 (citing Ball, 470 U.S. at 859, 105 S.Ct. 1668 ). In other words, “[w]here multiplicitous convictions are found, ‘the only remedy ... is ... to vacate one of the underlying convictions as well as the ... sentence based upon it.’ ” United States v. Barrett, 496 F.3d 1079, 1095 (10th Cir.2007) (quoting Rutledge v. United States, 517 U.S. 292, 301–02, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996) ). Merger has the same effect as vacating one of the multiplicitous sentences.
¶ 18 Although these cases do not articulate a test for determining when a trial court has abused its discretion in allowing multiplicitous charges to be tried, we consider them otherwise well-reasoned and follow them here.
2. Application ¶ 19 Defendant concedes that because the trial court merged the convictions before sentencing, multiple punishments for multiplicitous counts, which are prohibited by double jeopardy, were not imposed. We agree. And because any double jeopardy concerns arising from multiplicitous charges and convictions were cured by merger at sentencing, we need not address whether the court abused its discretion in allowing the jury to hear multiplicitous charges.
D. Defendant's Due Process Rights Were Not Violated
¶ 20 Alternatively, defendant argues that even if his protection against double jeopardy was not violated, the multiplicitous charges resulted in an unfair trial contrary to the Due Process Clause. We discern no due process violation.
1. Law ¶ 21 Courts have recognized two potential due process concerns in allowing a jury to consider multiplicitous charges. First, such charges increase the risk that the jury may reach a compromise verdict. See Johnson, 130 F.3d at 1426. Second, the jury could be exposed to different—and potentially more prejudicial—evidence when a defendant is tried on multiplicitous counts rather than on just one charge. See United States v. Clark, 184 F.3d 858, 872 (D.C.Cir.1999).
¶ 22 As to the first concern, our supreme court has observed that while multiplicity is “not fatal to an indictment,” it “may improperly suggest to the jury that the defendant has committed more than one crime.”Woellhaf v. People, 105 P.3d 209, 214 (Colo.2005). But the parties have not cited a Colorado case—nor have we found one—providing a due process analysis of multiplicity.
¶ 23 Again looking to federal precedent, “[t]he risk of a trial court not requiring pretrial election [among multiplicitous charges] is that it ‘may falsely suggest to a jury that a defendant has committed not one but several crimes.’ ” Johnson, 130 F.3d at 1426 (cited with approval in Woellhaf, 105 P.3d at 214 ); see also United States v. Morehead, 959 F.2d 1489, 1505 (10th Cir.1992) (collecting cases). Such a suggestion increases the risk that “the jury will be diverted from a careful analysis of the conduct at issue.” United States v. Clarridge, 811 F.Supp. 697, 702 (D.D.C.1992).
¶ 24 As a result, the jury may “reach a compromise verdict or assume the defendant is guilty on at least some of the charges.” Johnson, 130 F.3d at 1426 ; see also Ball, 470 U.S. at 868, 105 S.Ct. 1668 (Stevens, J., concurring) (“[W]here the prosecution's evidence is weak, its ability to bring multiple charges may substantially enhance the possibility that, even though innocent, the defendant may be found guilty on one or more charges as a result of a compromise verdict.”). And “when several members of a jury panel abandon their beliefs to settle upon a common ground with their fellow jurors,” as is the case in a compromise verdict, “the defendant has not been found guilty beyond a reasonable doubt by all members of the jury, and he has been denied due process of the law.” Commonwealth v. Trill, 374 Pa.Super. 549, 543 A.2d 1106, 1130 (1988) ; see also People v. Lantz, 186 Ill.2d 243, 238 Ill.Dec. 592, 712 N.E.2d 314, 324 (1999) (Heiple, J., dissenting) (a compromise verdict “renders defendant's trial so fundamentally unfair that it violates due process”).
¶ 25 The second concern arises only when the prosecution could not have presented the 349 P.3d 289
same evidence had only a single charge been tried. See Clark, 184 F.3d at 872 (where “the jury would have learned of [all evidence] regardless which separate charge was brought ... the only remedy that is necessary is to vacate one of the underlying convictions” (internal quotation marks omitted)).[5] Thus, “[w]hile a new trial might theoretically be available as a remedy ... where the jury considered a multiplicitous indictment but the defendant was sentenced under only one of the convictions,” it is not “where the Government would have introduced exactly the same evidence had the indictment contained only one count of the charged offense.” United States v. Matthews, 240 F.3d 806, 818 (9th Cir.2000) (internal quotation marks omitted), overruled on other grounds, 278 F.3d 880 (9th Cir.2002) (en banc) (adopting portions of earlier opinion affirming the defendant's conviction).
¶ 26 Based on these authorities, we conclude that trial of multiplicitous charges requires a due process analysis of at least these two concerns.
2. Application ¶ 27 Here, defendant relies heavily on Justice Stevens's words in Ball . But his conviction on all counts dispels any concern that the jury was misled into reaching a compromise verdict.
¶ 28 The risk posed by a compromise verdict is that “[t]he submission of two charges rather than one gives the prosecution ‘the advantage of offering the jury a choice—situation which is apt to induce a doubtful jury to find the defendant guilty of the less serious offense rather than to continue the debate as to his innocence.’ ” Ball, 470 U.S. at 868, 105 S.Ct. 1668 (Stevens, J., concurring) (quoting Cichos v. Indiana, 385 U.S. 76, 81, 87 S.Ct. 271, 17 L.Ed.2d 175 (1966) (Fortas, J., dissenting from dismissal of certiorari)). This risk is diminished where, as here, the jury was instructed to consider each count separately. See United States v. King , 713 F.Supp.2d 1207, 1220 (D.Haw.2010) (“The Court agrees with the Government that appropriate jury instructions would eliminate the risk of such prejudice.”). The jury is presumed to follow its instructions. E.g., People v. Lahr , 2013 COA 57, ¶ 25, 316 P.3d 74.
¶ 29 And in any event, rather than simply convicting defendant of a lesser charge—or even more than one but not all of the charges—here, the jury convicted him on every count. Thus, “[u]nlike the situation contemplated by Justice Stevens in Ball, ... there is no indication that here the jury was forced to reach a compromise verdict.” United States v. Shanks, 97 F.3d 977, 981 (7th Cir.1996) (holding harm from multiplicitous charges insufficient to support challenge to conviction under due process principles “[e]ven assuming [defendant] is correct that this pre-sentence dismissal of count one was non-ameliorative”); see United States v. Langford, 946 F.2d 798, 804–05 (11th Cir.1991) (holding any prejudice from multiplicitous convictions and sentences was harmless where entire body of evidence would have still been available to the prosecution had only one count been brought, sentences were concurrent, and jury convicted on all counts).
¶ 30 In addition, the trial court merged the theft and conspiracy charges into a single count of each. On appeal, defendant does not argue that the evidence was insufficient to support the single theft and conspiracy convictions. For these reasons, even if a compromise verdict could somehow have occurred, the prejudice was cured.
¶ 31 Defendant's argument based on different evidence also fails. The Attorney General's Answer Brief argues that the jury would have heard the same evidence had the charges been merged before trial into a single count of theft and a single count of conspiracy to commit theft. Defendant's Reply 349 P.3d 290
Brief concedes this point—“the same volume of evidence may have been presented to a jury.”
¶ 32 He continues, though, that “it likely would have been presented in a way that did not lead the jury to ignore the forest for the trees.” This argument is unpersuasive. The due process concern is not the means by which the evidence would be presented, but whether the same body of evidence would have been available to the prosecution. See, e.g., Clark, 184 F.3d at 872.
¶ 33 Even so, defendant asserts that he was prejudiced because:
• His counsel repeatedly objected to the multiplicitous counts before and during trial;
• He did not face counts based on different statutes or alternative means of committing theft; and
• The prosecution designed and used the multiplicitous charges to ensure a conviction in an otherwise close case.
These assertions are unpersuasive, for the following reasons. ¶ 34 First, a defendant whose counsel fails to object to multiplicitous counts below may be limited to merger as a remedy. See United States v. Bonavia , 927 F.2d 565, 571 (11th Cir.1991).[6] But defendant does not explain why this limitation would foreclose merger as an adequate remedy, where the defendant's counsel has objected. See Johnson , 130 F.3d at 1426 (court did not abuse its discretion in denying the defendant's motion to dismiss one of the multiplicitous counts where the defendant “was properly sentenced on only one count” and there was little, if any, risk of “the jury reaching a compromise verdict or [of] assuming [the defendant's] guilt on one or more of the counts”). To the extent that defendant suggests his objection somehow limited the trial court's discretion, that subject has been addressed.
¶ 35 Second, defendant's statement that he faced multiplicitous charges under a single unit of prosecution, as contrasted with multiplicitous charges under different statutes, while correct, does not present a meaningful distinction. Both scenarios risk creating an impression of greater criminality than would prosecution on a single charge and allowing the jury to hear evidence that would not have otherwise been presented. Defendant does not explain why or how the impression of greater criminality would be reduced had he faced multiplicitous charges under different statutes. As indicated, because the jury convicted him on all counts, the risk, if any, of a compromise verdict did not ripen. And he concedes that here, the prosecution would have had the same body of evidence available.
¶ 36 Third, defendant's argument that the multiplicitous charges “neatly supported” testimony of the prosecution's expert—even if true—fails to explain why, with only a single theft and a single conspiracy charge, the expert would have testified differently. Defendant asserts that the multiplicitous charges allowed the expert to describe the differences between the work performed and the work for which the county had been invoiced on “a street by street basis.” But defendant's concession that the same evidence would have been available to the prosecution, had only single counts been brought, precludes any possibility of prejudice.
¶ 37 Accordingly, we conclude that trial on multiplicitous charges did not violate defendant's due process rights.
III. Prosecutorial Misconduct Does Not Warrant Reversal
¶ 38 Defendant next contends the trial court abused its discretion in denying his post-trial motion based on prosecutorial misconduct. We discern no abuse of discretion.
A. Preservation and Standard of Review
¶ 39 Denial of a motion for a new trial is reviewed for an abuse of discretion. See, e.g., Farrar v. People, 208 P.3d 702, 704 (Colo.2009).
349 P.3d 291
In evaluating a claim of prosecutorial misconduct, the reviewing court engages in a two-step analysis: “First, it must determine whether the prosecutor's questionable conduct was improper based on the totality of the circumstances and, second, whether such actions warrant reversal according to the proper standard of review.” Wend v. People, 235 P.3d 1089, 1096 (Colo.2010). ¶ 41 Whether to reverse for prosecutorial misconduct is governed by the circumstances of the impropriety and “requires the appellate court to proceed through multiple analytic steps.” Id. at 1097. Defendant does not allege misconduct that “specifically and directly offend[s] [his] constitutional rights,” such as “ ‘his right not to testify, his right to be tried by a jury, or his right to post-arrest silence.’ ” Id. (quoting Crider v. People, 186 P.3d 39, 42 (Colo.2008) ). His assertion that alleged errors “impermissibly affect[ ] the impartiality of the jury” is insufficient to warrant review for constitutional error. Id. ¶ 42 Where, as here, the alleged misconduct is not of constitutional magnitude, “[w]hether a prosecutor has engaged in misconduct is an issue within the trial court's discretion.” People v. Reed, 2013 COA 113, ¶ 12, 338 P.3d 364. The applicable standard of review depends on whether the issue was preserved. “If defense counsel registered an objection at trial, we subject the error to general harmless error review.” Wend, 235 P.3d at 1097. As to preserved issues, the trial court's rulings on prosecutorial misconduct “will not be disturbed by an appellate court in the absence of a gross abuse of discretion resulting in prejudice and a denial of justice.” People v. Moody, 676 P.2d 691, 697 (Colo.1984). ¶ 43 But “[i]f there is no contemporaneous objection to the statement, a plain error standard of review applies.” Wend, 235 P.3d at 1097. “To constitute plain error, misconduct must be flagrant or glaring or tremendously improper, and it must so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction.” People v. Weinreich, 98 P.3d 920, 924 (Colo.App.2004), aff'd, 119 P.3d 1073 (Colo.2005). “[P]rosecutorial misconduct in closing arguments rarely, if ever, is so egregious as to constitute plain error.” People v. Constant, 645 P.2d 843, 847 (Colo.1982) (internal quotation marks omitted). ¶ 44 Here, defendant challenged many of the prosecution's comments in closing argument for the first time in his post-trial motion. But by failing to make a contemporaneous objection, defendant deprived the trial court of “an opportunity to correct any error that could otherwise jeopardize [his] right to a fair trial.” People v. Pahl, 169 P.3d 169, 183 (Colo.App.2006). For this reason, we treat these alleged errors as unpreserved. See People v. Handy, 657 P.2d 963, 966 (Colo.App.1982) (“Before the jury retired to deliberate, the defendant moved for a mistrial based on improper remarks by the prosecutor during closing argument. Since defense counsel made no objection during the prosecutor's closing argument, we must apply the plain error standard to the alleged misconduct.”).
B. Law ¶ 45 “In determining whether prosecutorial misconduct mandates a new trial, an appellate court must evaluate the severity and frequency of misconduct, any curative measures taken by the trial court to alleviate the misconduct, and the likelihood that the misconduct constituted a material factor leading to the defendant's conviction.” People v. Hogan, 114 P.3d 42, 55 (Colo.App.2004). “Defense counsel's failure to object is a factor that may be considered in examining the impact of a prosecutor's argument and may ‘demonstrate defense counsel's belief that the live argument, despite its appearance in a cold record, was not overly damaging.’ ” People v. Strock, 252 P.3d 1148, 1153 (Colo.App.2010) (quoting People v. Rodriguez, 794 P.2d 965, 972 (Colo.1990) ). ¶ 46 “During closing argument, a prosecutor has wide latitude and may refer to the strength and significance of the evidence, conflicting evidence, and reasonable inferences that may be drawn from the evidence.” 349 P.3d 292
People v. Walters, 148 P.3d 331, 334 (Colo.App.2006) ; see also People v. Roadcap, 78 P.3d 1108, 1114 (Colo.App.2003) (“A prosecutor has wide latitude to respond to a defendant's ‘opening salvos' in closing argument.”). ¶ 47 Yet, the prosecutor must “stay within the limits of appropriate prosecutorial advocacy during closing argument.” Walters, 148 P.3d at 334. Therefore, “[c]losing argument can never be used to mislead or unduly influence the jury.” Domingo–Gomez v. People, 125 P.3d 1043, 1049 (Colo.2005) ; see also People v. Mason, 643 P.2d 745, 752 (Colo.1982) (prosecutor must avoid “arguments calculated to appeal to prejudices or to mislead the jury”).
C. Application
¶ 48 According to defendant, the prosecution committed misconduct by referring to “public corruption” during voir dire and throughout the trial, and by making the following comments during closing argument: referring to payments made “under the table”; describing defendant's expert witness as a “hired gun”; appealing to jurors' personal sentiments and prejudice as taxpayers by referring to the misuse of taxpayer funds in the allegations of fraud; and expressing his personal belief in defendant's guilt.
¶ 49 We address and reject each contention in turn.
1. “Public Corruption” References
¶ 50 Defendant first contends the prosecution's pervasive use of the phrase “public corruption” throughout trial constituted prosecutorial misconduct that requires a new trial.[7] We first reject the Attorney General's assertion that defendant failed to preserve this issue. ¶ 51 Before trial, defendant filed and the trial court granted motions in limine to preclude evidence of a gift or gifts to, and work done at the homes of, county personnel. Also before trial, defendant told the court that he sought to prevent comments made by the same prosecutors in a related case to the effect of “the commissioners were paid off ... but we can't prove it.” And during voir dire, defendant's counsel objected to the prosecution's questioning about “corruption.” Although defendant explained that the prosecutor was “implying there is corruption in this case [when] [t]here is no charge of corruption,” the court concluded that the voir dire was proper because some persons in the venire “throw dishonesty in certain instances into the entire definition of corruption.”
¶ 52 In opening statement, the prosecution made two references to “corruption.” The prosecution made three references to “corruption” in initial closing argument. In rebuttal closing argument, the prosecution made five more references to corruption, ending with, “The corruption stopped in 2008. Now, it's time to hold him accountable for the corruption and the thefts that he committed in 2007.” Defendant's counsel did not object to any of these references. And in his closing argument, defendant's counsel pointed out that despite the multiple references, corruption remained unproven.
¶ 53 Even so, in ruling on defendant's post-trial motion, the court found:
• Defendant “attempted to avoid what [he] believed to be improper activities by the prosecution [in earlier cases] by asking the Court to address this in a preemptive manner.”
• “[D]uring the time of trial, with rare, if any, exceptions, the conduct that defendant objects to in his post-trial motions were the subject of timely objections, at least to the extent that he did not waive objections to a point such that it was too late for the court to have notice of the objection and, if it chose to do so, correct any alleged abuse.” ¶ 54 “At trial, the purpose of an objection is not only to express disagreement with a proposed course of action, but also to ‘afford [ ] the judge an opportunity to focus on the issue and hopefully avoid the error.’ ” Martinez v. People, 244 P.3d 135, 139 (Colo.2010) (citations omitted). At the same time, “[n]o talismanic incantation of the words, ‘I 349 P.3d 293
object,’ is required by the statute to avoid a waiver; it is enough that the defense contemporaneously make[s] clear ... its lack of consent or acquiescence in the termination order.” Paul v. People, 105 P.3d 628, 633 (Colo.2005).
¶ 55 Although the trial court may have overstated the frequency of defense counsel's objections, because the court found that defendant had presented it with a sufficient opportunity to correct any error, we conclude that the corruption issue was preserved. See Pahl, 169 P.3d at 183 (an issue is preserved where objection sufficiently alerts “the trial court to a particular issue in order to give the court an opportunity to correct any error”). ¶ 56 Here, the trial court found, with record support, that “there's no doubt that the record is replete with comments made by the prosecution at virtually every phase of the trial, from jury selection to closing argument, using either the exact [phrase], public corruption, or words so closely related thereto that little, if any, distinction noted would be picayune.” Yet, the court also found that given the context of the trial, the references to public corruption did not rise to the level of prosecutorial misconduct. It explained that while defendant's charges were not related to public corruption in “a strict legal sense,” the “charged criminal actions fell within the generally accepted nonlegal layman's definition of public corruption.” Specifically, the court found “that general lay perceptions and definitions of public corruption involve perversion of integrity; corrupt proceedings; may involve, as well, bribery.”
¶ 57 According to defendant, the references to public corruption improperly suggested bribery, of which the prosecution did not present any evidence. Cf. People v. Strachan, 775 P.2d 37, 38 (Colo.1989) (anonymous tip alleging “public corruption” involved the defendant's having “facilitated the payment of money by a developer to certain members of the city council as a bribe”). And defendant correctly points out that the evidence supporting the attempt to influence a public servant counts was limited to invoices for work that had not been done. ¶ 58 For these reasons, we disapprove of the prosecutor's conduct. And “we might have in the first instance ruled differently than the trial court” in denying defendant's post-trial motion. People v. Woods, 931 P.2d 530, 536 (Colo.App.1996). However, under the abuse of discretion standard, the test is not “ ‘whether we would have reached a different result but, rather, whether the trial court's decision fell within a range of reasonable options.’ ” People v. Salazar, 2012 CO 20, ¶ 32, 272 P.3d 1067 (Bender, J., dissenting) (quoting E–470 Pub. Highway Auth. v. Revenig, 140 P.3d 227, 230–31 (Colo.App.2006) ).
¶ 59 Here, defendant was charged with three counts of attempt to influence a public official. The court admitted testimony of an inspector for the county department of public works and of a former employee of defendant's company who described conduct that could fall within a lay person's understanding of public corruption.[8] Defendant does not dispute the admissibility of this evidence. Thus, because the record provides “some support” for the trial court's decision, we cannot hold that the court abused its discretion in finding the references to corruption did not constitute prosecutorial misconduct. 349 P.3d 294
People v. Pena–Rodriguez, 2012 COA 193, ¶ 13, –––P.3d –––– (cert. granted Aug. 19, 2013).
2. Comments in Closing Argument
a. Payments Made “Under the Table”
¶ 60 Defendant preserved, with a contemporaneous objection, his contention that the prosecution's comments suggesting he made payments “under the table” to public officials constituted prosecutorial misconduct. This comment is the only one that the trial court found both preservation and prosecutorial misconduct, but it concluded the error was harmless. We agree, but apply a different harmless error standard than that articulated by the trial court.
¶ 61 Before closing arguments, the court instructed the jury that “closing argument, just as opening statement, is not evidence.” In rebuttal closing argument, the prosecution said, “If something was given to them under the table, we can't prove that. Hence the word ‘under the table.’ ” Defense counsel objected. The court overruled the objection and said, “the jury can rely on their [sic] own memory as to the evidence.” ¶ 62 In addressing the post-trial motion regarding this statement, however, the trial court found, “defendant is correct that there was not one scintilla of direct evidence regarding any payment of money” to public officials in this case. It then concluded that these comments amounted to prosecutorial misconduct. Because the record supports this finding, we agree with the trial court's conclusion. See Domingo–Gomez, 125 P.3d at 1057 (“A prosecutor's insinuations that ‘additional inculpatory evidence exists that was not presented at trial ... invite[s] the jury to speculate about such phantom proof, and may be even more prejudicial than erroneously admitted specific proof.’ ” (quoting Bennett L. Gershman, Prosecutorial Misconduct § 11:28, at 496 (2d ed.2005))).[9] ¶ 63 Then the court concluded that the comments were harmless because the verdict was not “surely attributable to the error.” In so concluding, the court mistakenly applied the test for a preserved claim of constitutional error. See People v. Apodaca–Zambori, 2013 COA 29, ¶ 9, –––P.3d –––– (“The constitutional harmless error test is ... whether the guilty verdict actually rendered in this trial was surely unattributable to the error.” (internal quotation marks omitted)). While the court should have “subject[ed] the error to general harmless error review,” Wend, 235 P.3d at 1097, applying the higher standard only afforded defendant greater protection. Cf. People v. Valdez, 183 P.3d 720, 724 (Colo.App.2008) (error in instruction harmless when it could only have inured to the defendant's benefit).
¶ 64 But that does not end our inquiry into the scope of review because defendant argues that the trial court's harmless error finding should be reviewed de novo. The Attorney General responds that we should review for an abuse of discretion. Resolving this issue is complicated by its unique procedural posture. ¶ 65 On appeal, defendants raise prosecutorial misconduct only when the trial court has determined that misconduct did not occur. If the appellate court rules otherwise, then that court must consider whether the misconduct was either harmless error or, in limited circumstances, constitutional harmless error. See People v. Davis, 280 P.3d 51, 52–53 (Colo.App.2011) (“[W]e reject defendant's contention that we must review the alleged prosecutorial misconduct here for constitutional harmless error, and we instead review it for non-constitutional harmless error.”). But such cases do not describe harmless error review as de novo or otherwise, probably because harmless error arose for the first time on appeal. ¶ 66 By contrast, here defendant chose to raise prosecutorial misconduct in a post-trial motion and the trial court found misconduct. In this unusual setting, the following principles are informative on the scope of review:
349 P.3d 295
• A trial court's denial of a post-trial motion—even when premised on allegations of prosecutorial misconduct—is reviewed for an abuse of discretion. Reed, ¶ 12 ; see People v. Robles, 302 P.3d 269, 279 (Colo.App.2011) (“We review a district court's denial of a motion for a mistrial based on alleged prosecutorial misconduct for an abuse of discretion.” (collecting cases)), aff'd, 2013 CO 24, 302 P.3d 229.
• “The key consideration in evaluating a motion for a new trial on account of the actions of the prosecuting attorney is the effect of the putative misconduct upon the jury.” People v. Wilkinson, 37 Colo.App. 531, 535, 555 P.2d 1167, 1171 (1976).
• In determining whether a trial court abused its discretion in denying a motion for a new trial on prosecutorial misconduct grounds, appellate courts are mindful that “the trial court is best positioned to evaluate whether any statements made by counsel affected the jury's verdict.”Domingo–Gomez, 125 P.3d at 1049–50 ; accord Wend, 235 P.3d at 1096–97 (“The responsibility for judging the effect of a prosecutor's improper actions first falls to the trial court, for the trial judge is in the best position to assess potential prejudicial impact.”). ¶ 67 These formulations parallel the appellate test for harmless error, which requires reversal “only if the error had a substantial and injurious effect or influence in determining the jury's verdict.” People v. Novotny, 2014 CO 18, ¶ 19, 320 P.3d 1194 ; accord Krutsinger v. People, 219 P.3d 1054, 1058 (Colo.2009). Thus, based on both this parallelism and the strong deference to trial court assessment of prejudice from prosecutorial misconduct, here we apply the abuse of discretion standard to the court's harmless error ruling. ¶ 68 In applying this standard, we use the same factors as we would in a de novo review, but do so with deference to the trial court's decision. We discern no abuse of discretion, for the following reasons:
• The reference was isolated in a lengthy summation, see People v. Munsey, 232 P.3d 113, 124 (Colo.App.2009) (holding court did not abuse its discretion in finding inappropriate comment harmless because it was an “isolated portion of the prosecution's closing”);
• The reference was qualified (“[W]e don't [know] what took place in those meetings. If something was given to them under the table....” (emphasis added));
• In overruling defendant's objection, the trial court urged the jury to rely on its memory of the evidence, and had previously admonished the jury that closing argument is not evidence, see People v. Santana, 255 P.3d 1126, 1136 (Colo.2011) (holding improper arguments “neutralized” when court instructed jury that counsel's arguments are “not evidence”); Lahr, ¶ 25 (“Absent contrary evidence, we presume that jurors follow a district court's instructions.”); and
• In denying the post-trial motion, the court found, with some record support, that “the strength of the evidence supported the verdicts, and that [sic] was certainly well beyond what could be said to have been adequate to provide such support for the verdicts”. See People v. Estes, 2012 COA 41, ¶¶ 39, 42, 296 P.3d 189 (prosecutorial misconduct in closing argument did not warrant reversal because, among other things, overwhelming evidence supported the guilty verdict).
b. Defendant's Expert Witness Was a “Hired Gun” and a “Professional Witness” ¶ 69 Defendant next challenges the prosecution's references to his expert witness as a “hired gun” and a “professional witness.” His counsel failed to contemporaneously object. We discern no plain error.
¶ 70 In People v. McBride, 228 P.3d 216, 223 (Colo.App.2009), the prosecutor said,
the “hired gun expert” had “to come up with something” and experts “aren't going to just admit to you that they made this up,” but “[t]hat's exactly what happened. Either he made it up or he didn't look at the evidence.” ... [T]he expert was “full of it, full of it,” and his testimony was “garbage.”
349 P.3d 296
Because the “repeated personal attacks on the defense expert went so far beyond accepted limits,” the division held that such comments constituted “obvious error.” Id.
¶ 71 But here, the prosecution's references to the expert as a “hired gun” and as a “professional witness” were much less flagrant. See People v. Pollard, 2013 COA 31, ¶ 39, 307 P.3d 1124 (“To qualify as ‘plain’ error, an error must be so clear-cut, so obvious, that a trial judge should be able to avoid it without benefit of objection.”). Rather, because the references to the expert were “brief and isolated,” we discern no “substantial likelihood that the comment[s] affected the verdict or deprived defendant of a fair trial.” People v. Sommers, 200 P.3d 1089, 1097–98 (Colo.App.2008). Thus, the comments were not plain error.
c. Taxpayer Bias ¶ 72 Next, defendant challenges the prosecution's comment that the “taxpayers” were the victims of defendant's conduct, as improperly eliciting the jurors' bias as taxpayers. Defendant did not preserve this issue. We discern no plain error. ¶ 73 A prosecutor's comment eliciting jurors' bias as taxpayers is improper. See United States v. Palma, 473 F.3d 899, 902 (8th Cir.2007) ( “Remarks invoking the individual pecuniary interests of jurors as taxpayers are universally viewed as improper.”). Yet, reversal is not required where, as here, “[t]he jurors knew they were taxpayers and that their tax money was at issue.” Munsey, 232 P.3d at 124. And here too, the comment was an “isolated portion of the prosecution's closing.” Id. Thus, viewing the record as a whole, we discern no plain error. See also People v. Randell, 2012 COA 108, ¶ 79, 297 P.3d 989 (“[A]lthough the prosecution's [repeated] comments [regarding jurors' status as taxpayers] were improper, they did not undermine the fundamental fairness of this trial, where misappropriation of public funds was a central issue.”).
d. Personal Opinion of Defendant's Guilt ¶ 74 Lastly, defendant challenges a comment of the prosecution suggesting personal belief in his guilt:
Reasonable inferences, ladies and gentlemen. What makes sense to you in your everyday life experiences? This man is guilty. If not him, who? ... He's guilty, ladies and gentlemen, he's guilty of every single count.
Defendant did not preserve this issue. Again, we discern no plain error. ¶ 75 A prosecutor may not “express a personal opinion as to ... the guilt of the defendant.” People v. Welsh, 176 P.3d 781, 788 (Colo.App.2007). But “[i]n determining the propriety of [such] statements, we consider the language used, the context in which the statement was made, and any other relevant factors.” People v. Whitman, 205 P.3d 371, 384 (Colo.App.2007) (internal quotation marks omitted).
¶ 76 Here, we agree with the trial court that the statement was “what a reasonable inference would logically lead a jury to find as being true.” The statement was made near the end of the prosecution's closing argument, followed by specific references to the prosecution's witnesses and evidence. Then, the prosecutor said, “Look at the evidence, find him guilty.”
¶ 77 For these reasons, taken in context, the reference to guilt was not so flagrant that it cast “serious doubt on the reliability of the verdict, as to constitute plain error.” People v. Ujaama, 2012 COA 36, ¶¶ 72, 74, 302 P.3d 296 (collecting cases). This is so because “[w]e read the prosecutor's statement[s] ... as simply asking the jury to make a reasonable inference that defendant was guilty based on the evidence presented at trial.” People v. Villa, 240 P.3d 343, 358 (Colo.App.2009).
¶ 78 Accordingly, we conclude that the trial court did not abuse its discretion in denying defendant's post-trial motion.
IV. Conclusion
¶ 79 The judgment of conviction is affirmed.
JUDGE ROMÁN and JUDGE BOORAS concur.
--------
Notes:
[1] See also, e.g., United States v. Johnson, 130 F.3d 1420, 1426 (10th Cir.1997) (“A decision of whether to require the prosecution to elect between multiplicitous counts before trial is within the discretion of the trial court.”); United States v. Howard, 918 F.2d 1529, 1532 (11th Cir.1991) (“We review the district court's decision [to deny a motion to compel consolidation and/or election of multiplicitous charges] for abuse of discretion.”); United States v. Throneburg, 921 F.2d 654, 657 (6th Cir.1990) (same).
[2] In the Answer Brief, the Attorney General explains, “[t]he prosecution agreed that Lucero had settled Colorado law and that the trial court should merge the theft and conspiracy verdicts into single convictions because all of Rhea's crimes took place within a six-month period.”
[3] After the underlying acts had been committed but before defendant's trial, the General Assembly amended the theft statute to make optional the six-month unit of prosecution mandated in Roberts . See ch. 244, sec. 2, § 18–4–401(4)(a), 2009 Colo. Sess. Laws 1099–1100. However, in People v. Vigil, 251 P.3d 442, 449 (Colo.App.2010), the division held that the amendment could not be given retroactive effect. Lucero, which was decided shortly after defendant was convicted but before his sentencing, confirmed this holding. Thus, because defendant was charged under the mandatory statute, “we need not construe the intent or effect of this 2009 legislation.” Lucero v. People, 2012 CO 7, ¶ 27, 272 P.3d 1063.
[4] See also, e.g., United States v. Graham, 305 F.3d 1094, 1100–01 (10th Cir.2002) (multiplicitous indictment charging separate counts remedied by vacating multiplicitous counts along with their concurrent sentences); United States v. Clark, 184 F.3d 858, 872 (D.C.Cir.1999) ( “Upon finding that a defendant has been convicted of two charges for a single offense, the usual remedy is to hold that the convictions have merged and order that one be vacated.”); United States v. King, 713 F.Supp.2d 1207, 1218 (D.Haw.2010) (“A court may also choose to have all counts proceed to trial and vacate one of the multiplicitous convictions prior to sentencing.” (citing United States v. Hector, 577 F.3d 1099, 1101–03 (9th Cir.2009) )); State v. Winters, 276 Kan. 34, 72 P.3d 564, 570 (2003) (holding trial court did not abuse its discretion in vacating the lesser included offense when faced with multiplicitous convictions).
[5] See also United States v. Nash, 115 F.3d 1431, 1438 (9th Cir.1997) (where jury considered a multiplicitous indictment but defendant was sentenced on only one of the convictions, new trial is not warranted if “the government would have introduced exactly the same evidence had the indictment contained only one count” of the charged offense); United States v. Lilly, 983 F.2d 300, 305 (1st Cir.1992) (“When a defendant is tried on multiplicitous charges, yet the same evidence would have been admissible against him had he been tried on a single, properly laid count, he cannot ordinarily complain of a spillover effect.”).
[6] Although recently granting certiorari to address the issue, Scott v. People, 2013 WL 6172546 (Colo. No. 12SC966, Nov. 25, 2013), our supreme court has not yet addressed whether double jeopardy can be raised for the first time on appeal, and divisions of this court are divided on this question. See People v. Houser, 2013 COA 11, ¶ 31, 337 P.3d 1238 (collecting cases).
[7] Defendant also points to extensive pre-trial publicity connecting him and his company with allegations of corruption. But he does not assert that he sought any separate relief for such publicity and he acknowledged the trial court's efforts to redress any prejudice during voir dire.
[8] For instance, the public works employee testified that when sharing “concerns” with her supervisor, Sam Gomez, that the quantities of crack seal invoiced by defendant's company did not align with work actually performed, she “was typically told, Don't worry about it, I'll take care of it when it gets to me.” She also shared that when she would go to Gomez asking, “We have a discrepancy, what would you like me to do?,” he would respond with “Just use what's on the run sheet,” which was the quantity report provided by defendant's company. She continued, “Even when I asked technical questions, I was given the same answer of, Don't bother with it, just write down what they've given to you and submit them to me.”
The former employee further testified that defendant told him to “inflate quantities” in invoices, because defendant “pretty much knew we couldn't make money, and we could get away with whatever we wanted up in Adams County.” The employee said defendant knew that the “inspector wasn't collecting box tops; they weren't measuring streets” because defendant was “good friends” with “the county manager,” Sam Gomez.
[9] The Attorney General does not assert any procedural bar to the court's effectively reversing itself. Nor do we discern any. See People v. Porter, 2013 COA 130, ¶ 35, ––– P.3d –––– (“After the prosecution filed a motion to reconsider, the trial court reversed itself and reinstated the habitual criminal counts.”).
--------