24CA1917 Peo in Interest of RMB 04-17-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1917
Boulder County District Court No. 22JV30127
Honorable Bruce Langer, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of R.M.B., A.K.H., and T.G.B., Children,

and Concerning T.H.,

Appellant.

---

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE BROWN
J. Jones and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 17, 2025

---

Debra W. Dodd, Special County Attorney, Mary Athey, Assistant County Attorney, Boulder, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

Andrew A. Gargano, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1        In this dependency and neglect action, T.H. (mother) appeals the judgment terminating her parent-child legal relationships with R.M.B., A.K.H., and T.G.B. (the children).  We affirm.

## I.        Background

¶ 2        The Boulder County Department of Housing and Human Services (the Department) filed a petition in dependency and neglect alleging physical abuse and neglect of the children and concerns about mother's substance dependence and criminal activity.  The Department also alleged that mother had extensive prior involvement with the Department, including one dependency and neglect action and three non-court-involved voluntary cases.

¶ 3        The juvenile court adjudicated the children dependent and neglected and adopted a treatment plan for mother.  The Department later moved to terminate mother's parental rights.  Just over two years after the petition was filed, the juvenile court terminated mother's parental rights following a contested hearing at which mother did not appear.

## II.     Reasonable Efforts

¶ 4     Mother first contends that the juvenile court erred by finding that the Department made reasonable efforts to rehabilitate her. We disagree.

### A.     Applicable Law and Standard of Review

¶ 5     Before a court may terminate parental rights under section 19-3-604(1)(c), C.R.S. 2024, a county department of human services must make reasonable efforts to rehabilitate parents and reunite the family. §§ 19-1-103(114), 19-3-100.5(1), 19-3-208, 19-3-604(2)(h), C.R.S. 2024. Reasonable efforts means the "exercise of diligence and care . . . for children and youth who are in foster care or out-of-home placement." § 19-1-103(114).

¶ 6     Services provided in accordance with section 19-3-208 satisfy the reasonable efforts requirement. § 19-1-103(114). Among the services required under section 19-3-208 are screenings, assessments, and individual case plans for the provision of services; home-based family and crisis counseling; information and referral services to available public and private assistance resources; family time services; and placement services. § 19-3-208(2)(b).

¶ 7     The juvenile court should consider whether the services provided were appropriate to support the parent's treatment plan. *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011). The parent is ultimately responsible for using those services to obtain the assistance needed to comply with the treatment plan. *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011).

¶ 8     Whether a department satisfied its obligation to make reasonable efforts to reunify the family is a mixed question of fact and law. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8. We review the juvenile court's factual findings related to reasonable efforts for clear error but review de novo the court's legal determination, based on those findings, as to whether a department satisfied its reasonable efforts obligation. *Id.*

### B.     Analysis

¶ 9     As an initial matter, the Department and Guardian Ad Litem urge us to decline to address mother's reasonable efforts contention because mother did not raise it before or at the termination hearing. Divisions of this court are split on this issue. *People in Interest of E.S.*, 2021 COA 79, ¶ 13; *see S.N-V.*, 300 P.3d at 917-18 (a failure to object to the lack of reasonable efforts does not bar appellate

3

review); *People in Interest of D.P.*, 160 P.3d 351, 355-56 (Colo. App. 2007) (a parent must bring any deficiencies in reasonable efforts to the juvenile court's attention to preserve such a challenge for appeal). But we need not decide which approach is correct because even if we assume that mother preserved this argument, we are not persuaded by it.

¶ 10    The juvenile court found that the Department made reasonable efforts to provide services to help mother and that those services were ultimately unable to successfully rehabilitate her. In so doing, the court found that the Department provided access to therapy and the community infant program, substance monitoring, supervised family time, support for the children in out-of-home placement, bus passes, gift cards, housing assistance, and support from the caseworker.

¶ 11    Mother's treatment plan had only four elements: (1) communicate with the Department; (2) improve her parenting relationship with the children; (3) maintain housing and employment; and, as most relevant here, (4) "demonstrate an ability to be a protective parent by addressing the concerns of physical abuse, lack of supervision, substance use, and exposure to

domestic violence."  The treatment plan's action steps relating to

substance dependence required mother to

> (1) complete an "extended assessment" with a specific provider and participate in any recommended services for her substance dependence;
> (2) submit random substance testing through urinalysis;
> (3) report any prescribed medications; and
> (4) complete a clinically guided harm-reduction plan for her continued use of THC.

¶ 12    As mother correctly notes, the Children's Code directs a

department to provide services "as determined necessary and

appropriate by individual case plans." § 19-3-208(2).  Mother

directs us to her case plan, which "identified the purposes of her

treatment" to be to identify triggers to substance use, develop

healthy coping skills, develop a harm reduction plan, establish

accountability for her actions and behavior, and understand the

impact of her substance dependence on the children.  Mother

contends that the Department "provided insufficient services

unrelated to her" substance dependence because the services

provided did not assist her in achieving those purposes.

¶ 13    The Department devised an appropriate treatment plan for

mother; provided referrals for several types of substance abuse and

5

mental health treatment, a therapeutic parenting program, and sobriety monitoring; gave mother bus passes; coordinated supervised family time with coaching; and facilitated placement services for the children. With respect to substance dependence specifically, the Department referred mother to the substance dependence treatment provider identified in the treatment plan. Mother declined to participate in the assessment, and the Department made a second referral. When mother completed the assessment, almost a year after the petition was filed, she denied any substance dependence. Although treatment was recommended, mother attended just a handful of sessions. Mother was unsuccessfully discharged from substance dependence treatment because of her lack of engagement.

¶ 14     Mother now contends that her substance abuse disorder required "stronger or alternative treatment." But nothing in her case plan indicated that "stronger or alternative" services were necessary or appropriate. Nor did mother or her counsel ask the juvenile court to order or the Department to provide the specific, alternative, unconventional services she identifies for the first time on appeal. Regardless, the Department did offer mother services

beyond what the treatment plan required, including withdrawal management, intensive outpatient programs, and in-patient treatment. Mother declined these services.

¶ 15     On this record, we perceive no error in the juvenile court's determination that the Department made reasonable efforts.

### III.     Fitness Within a Reasonable Period of Time

¶ 16     Mother next contends that the juvenile court erred by finding that her conduct or condition was unlikely to improve within a reasonable time. Although mother styles her argument for additional time as a failure to adopt a less drastic alternative, she does not propose an alternative placement option that would have resolved the dependency and neglect case. *See People in Interest of A.R.*, 2012 COA 195M, ¶ 44 (noting that the less drastic alternative analysis involves the consideration of whether a placement alternative — such as an allocation of parental responsibilities — would satisfy the child's best interests). Thus, we focus our discussion on whether clear and convincing evidence supported the juvenile court's conclusion that mother's condition was unlikely to improve within a reasonable time. We find no basis for reversal.

## A. Applicable Law

¶ 17     An unfit parent is one whose conduct or condition renders them "unable or unwilling to give the child reasonable parental care to include, at a minimum, nurturing and safe parenting sufficiently adequate to meet the child's physical, emotional, and mental health needs and conditions." § 19-3-604(2). In determining whether a parent's conduct or condition is likely to change within a reasonable time, "the court may consider whether any change has occurred during the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition." *People in Interest of S.Z.S.*, 2022 COA 133, ¶ 24. The court need not give a parent additional time, even when there has been recent progress on the treatment plan. *Id.* at ¶¶ 24, 28-29.

¶ 18     What constitutes a reasonable time is fact specific and must be determined by considering each particular child's physical, mental, and emotional conditions and needs. *Id.* at ¶ 25. When, as here, the children are under six years old at the time of the filing of the petition, the action is subject to the expedited permanency planning provisions and the court must consider the children's

8

need to be placed in a permanent home as expeditiously as possible.  §§ 19-1-102(1.6), 19-1-123, C.R.S. 2024.

## B.    Analysis

¶ 19    The juvenile court determined that mother was unfit and was not likely to become fit within a reasonable time.  In so doing, the juvenile court acknowledged that mother "made a number of efforts to try to comply with the treatment plan."  The court found, with record support, that mother was communicative with the caseworker, attended many of her family time opportunities, and demonstrated her love for the children.

¶ 20    But the juvenile court found that all three of the children had heightened needs.  And despite mother's success in some areas of her treatment plan, she was unable to demonstrate the ability to provide a safe or appropriate environment for the children or meet the children's extensive needs.  The court also found that mother's ability to meet the children's needs was unlikely to change within a reasonable time.  Mother was inconsistent in her availability to assist the children in receiving services that they needed.  She was likewise inconsistent in her participation in her own services under the treatment plan.  And the court noted that mother recently

admitted to daily methamphetamine use. The court found, "since it has been two years, and given all the other circumstances, . . . a reasonable time has passed."

¶ 21 The record supports these findings. The caseworker testified that all three children had special needs and that they would always have heightened needs, even with services in place. The placement caseworker testified that the children experienced "emotional and behavioral dysregulation needing significant support" at least once a day.

¶ 22 At the time of the termination hearing, R.M.B. was four years old. R.M.B. had club feet requiring medical braces and frequent medical appointments and a speech delay requiring speech therapy. R.M.B.'s behavioral concerns were so great that her daycare provider required her placement provider to be present with her at daycare.

¶ 23 A.K.H. was five years old. He participated in trauma-focused play therapy, benefited from an individualized education plan at school, and was treated for medical concerns related to asthma. During the course of the dependency and neglect action, A.K.H. underwent a psychological evaluation and was diagnosed with

10

post-traumatic stress disorder, attention-deficit/hyperactivity disorder, and a specified neurodevelopmental disorder.

¶ 24    T.G.B. was seven years old.  T.G.B. participated in "extensive mental health treatment for suicidal ideation" and behavioral concerns.  T.G.B. received in-home supports for behavioral and emotional regulation and was being evaluated for an individual education plan at school.

¶ 25    The family time supervisor testified that mother demonstrated her love for the children but struggled with identifying the children's needs and setting appropriate limits and boundaries.  At times, mother struggled to engage with the children and displayed "periods of emotional unavailability" with them.  Mother also struggled to reflect on her parenting or receive coaching from professionals. Mother's family time was unable to progress to a community setting because of ongoing safety concerns during family time sessions. The caseworker testified that mother struggled to meet her own needs, let alone the needs of the children, which mother consistently minimized.

¶ 26    Moreover, mother was given additional time to become fit.  The caseworker testified that she "dragged her feet" before requesting

11

termination because she "was very hopeful that if we gave it more time, things would change." But things did not change with more time. At the termination hearing, the caseworker testified that mother was not fully compliant with any objective of her treatment plan, had recently admitted to daily methamphetamine use, and had six active warrants for new criminal charges.

¶ 27    Mother now contends that just before the termination hearing her pretrial services contact arranged an intensive residential program for her with aftercare. But the record does not contain any evidence about this program that the juvenile court could have considered. True, in opening statement, mother's counsel argued that mother had a number of warrants and open cases and "one of the bond conditions on one of those cases is that she apply for STIRT before she's even released." But mother did not appear at the termination hearing to testify about whether she actually applied for STIRT as directed, nor did counsel elicit testimony from the caseworker or mother's pretrial services contact about the matter. *See People v. Rhea*, 2014 COA 60, ¶ 68 (the argument of counsel is not evidence).

¶ 28    Importantly, the record supports the juvenile court's findings that a reasonable time had already passed for these children. The caseworker, an expert in child protection casework, opined that "the children are waiting, and they need things when they need them, and . . . that undue delay is causing harm to them." The caseworker also opined that it was important for the children to be able to be adopted and that the children needed "consistent safety so that they can process and repair from the trauma that they've experienced."

¶ 29    Because the record supports the juvenile court's findings, we will not disturb them on appeal.

## IV.    Due Diligence

¶ 30    Mother next contends that the juvenile court erred by finding that the Department met its statutory due diligence obligation. We disagree.

### A.    Standard of Review and Applicable Law

¶ 31    "[M]ere assertions of a child's Indian heritage (including those that specify a tribe or multiple tribes by name), without more, are not enough to give a juvenile court 'reason to know' that the child is an Indian child." *People in Interest of E.A.M. v. D.R.M.*, 2022 CO 42,

¶¶ 6, 48 (emphasizing that the statutory definition of "Indian child" applies based on the child's political ties to a federally recognized Indian tribe, not on the child's or her parents' Indian ancestry). Such assertions do not trigger provisions in the Indian Child Welfare Act (ICWA), but rather the statutory due diligence requirements in section 19-1-126(3), C.R.S. 2024. *H.J.B. v. People in Interest of A-J.A.B.*, 2023 CO 48, ¶ 5.

¶ 32    Due diligence requires a department to "earnestly endeavor to investigate the basis" for an assertion that the child may be an Indian child, contact any family members or others specifically identified by a parent as having knowledge of Indian heritage, and learn if there is further information that would help the court in determining if there is a reason to know that the child is an Indian child. *Id.* at ¶ 57. Due diligence does not require a department "to actually succeed in its efforts or exhaust every possible option in attempting to do so." *Id.* at ¶ 58.

¶ 33    Whether the Department has satisfied its due diligence obligation is left to the sound discretion of the juvenile court because a due diligence finding "necessarily requires the court to

14

make credibility determinations regarding the source of the information and the basis for the source's knowledge." *Id.*

### B.    Analysis

¶ 34    As an initial matter, the parties dispute whether mother was required to preserve her due diligence argument.  We need not resolve the dispute because even if we assume mother did not need to preserve the argument, we are not persuaded by it.

¶ 35    The juvenile court found that the Department made continuing inquires to determine the possible Indian status of the children.  The record supports this finding.

¶ 36    At the shelter hearing, father indicated that the children may have Native American heritage with the Tonkawa Tribe of Oklahoma.  Shortly thereafter, the Department sent formal notice to the identified tribe.  Less than a week later, the tribe responded with a handwritten note on the notice stating, "None enrolled with the Tonkawa Tribe of Oklahoma."  This response was filed into the record almost two years before the termination hearing.  At subsequent hearings, the court made ongoing inquiries and entered findings that there was no additional information available.

¶ 37    Mother now contends that the notation from the Tonkawa Tribe of Oklahoma leaves open the possibility that the children themselves were enrolled or eligible for enrollment. Mother did not raise this uncertainty with the juvenile court and does not now explain how it impacted the Department's due diligence obligations. In any event, it is unclear what more the Department could have done to explore the possibility that the children were enrolled. It exercised more than due diligence by sending formal notice to the Tonkawa Tribe of Oklahoma, *see id.* at ¶¶ 51, 55, which did not result in either tribal intervention or a declaration that the children were enrolled members, *see* 25 U.S.C. § 1912(a); § 19-1-126(1)(a)-(b).

¶ 38    Even if the children were eligible for enrollment, that status would not have created additional due diligence obligations for the Department. *See People in Interest of K.C. v. K.C.*, 2021 CO 33, ¶ 39 (holding that "neither federal nor state law imposes on the Department any obligation to assist in enrolling eligible children in a tribal nation"). Nor would the provisions of ICWA apply if the children were eligible for enrollment, since neither parent was a member of the tribe. *See H.J.B.*, ¶ 65; *see also* § 19-1-103(83)

16

(consistent with 25 U.S.C. § 1903(4)), defining an "Indian child" as an unmarried person under the age of eighteen who is either a member of an Indian tribe or is eligible for membership in an Indian tribe *and* is the biological child of a member of an Indian tribe).

¶ 39 Under such circumstances, we conclude that the record supports the juvenile court's findings that (1) the Department made the required due diligence inquiries and (2) there was no reason to know that the children are Indian children. *See H.J.B.*, ¶ 65.

## V. Disposition

¶ 40 The judgment is affirmed.

JUDGE J. JONES and JUDGE YUN concur.